UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

DANTE CUBANGBANG,

                                    Defendant.

**ORDER**

(S1) 18 Cr. 601 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Defendant Dante Cubangbang pled guilty to conspiracy to distribute oxycodone, conspiracy to commit health care fraud, and conspiracy to commit money laundering.  (Oct. 9, 2019 Plea Tr. at 12; see Indictment (Dkt. No. 2))  Sentencing is scheduled for July 30, 2020. (Apr. 10, 2020 order (Dkt. No. 192))  Cubangbang is currently detained at the Metropolitan Correctional Center ("MCC").

        On April 6, 2020, Cubangbang moved for release on bail, arguing that he is "52 years old and suffers from moderate asthma, which strongly suggests he is an at-risk inmate." (Apr. 6, 2020 Def. Ltr. (Dkt. No. 186) at 1)  The Government opposes his application.  (Apr. 8, 2020 Govt. Ltr. (Dkt. No. 188))  For the reasons stated below, Cubangbang's motion for release on bail will be denied.

## BACKGROUND

### I.    THE EVIDENCE AT TRIAL

        Cubangbang is a medical doctor.  He owned and operated EPOH Medical, PC (the "Clinic"), a purported pain clinic located in Woodside, New York.  The primary purpose of Cubangbang's clinic was to provide unlawful prescriptions for oxycodone.  The Court is fully familiar with the facts concerning Cubangbang's clinic and his improper prescribing of

oxycodone, because two of Cubangbang's co-defendants proceeded to trial, and Cubangbang testified at that trial.  (Trial Tr. (Dkt. No. 125) at 43, 46, 48, 58

Oxycodone is a highly addictive narcotic drug, or opioid, used to treat severe and chronic pain conditions.  Because of its addictive qualities and potential for abuse, the distribution of oxycodone is heavily regulated.  (Trial Tr. (Dkt. No. 119) at 142-47, 166-73)

The evidence at trial showed that Cubangbang operated the Clinic, with the assistance of nurse practitioner John Gargan, office manager Michael Kellerman, and receptionist Loren Piquant.  Cubangbang and Gargan wrote the unlawful prescriptions for oxycodone.  The "patients" sold the pills they obtained to drug dealers, who then marketed them on the street.  The Government's evidence included, inter alia, testimony from co-conspirators, audio-video evidence of what took place in examination rooms at the Clinic, and analysis of prescribing data.  (Trial Tr. (Dkt. No. 125) at 107-115; see generally Trial Tr. (Dkt. Nos. 117, 119, 121; see also Dkt. No. 123 at 1-160)

Although Cubangbang was – at the time of trial – a signed-up Government cooperator, the Government did not call him as a witness.  Cubangbang disclosed to the Government shortly before he was due to testify that he had obtained sex from a Clinic patient in exchange for providing oxycodone prescriptions.  Because Cubangbang had lied about this incident in earlier proffer sessions, the Government elected not to call him at trial.[1]  (Trial Tr. (Dkt. No. 121) at 7-8; Trial Tr. (Dkt. No. 125) at 100-107; Apr. 8, 2020 Govt. Ltr. (Dkt. No. 188) at 3)

---

[1] Since the trial, the Government has elected to terminate Cubangbang's cooperation agreement. (Apr. 8, 2020 Govt. Ltr. (Dkt. No. 188) at 3)

Defendant Gargan called Cubangbang as a witness, however, and Cubangbang candidly admitted during his testimony that the Clinic he operated was nothing more than a pill mill for medically unnecessary oxycodone 30 milligrams prescriptions. Cubangbang testified that he knew that the purported patients he saw did not have a legitimate reason to obtain prescriptions for oxycodone 30 milligrams. His appointments with "patients" generally lasted only a few minutes, no physical examinations were conducted, and Cubangbang asked the "patient" no questions about his or her pain. Cubangbang further testified that he was not engaged in the practice of medicine. (Trial Tr. (Dkt. No. 125) at 47-49, 109-115)

The Government's evidence at trial demonstrated that the Clinic prescribed approximately 6.2 million oxycodone pills from approximately 2012 to September 2018, the vast majority of which were medically unnecessary. In or around 2015, the Clinic switched to a cash-only policy for patient visits, even though many "patients" submitted their visits to Medicare or Medicaid. (Trial Tr. (Dkt. No. 117) at 40-44, 204-07; Trial Tr. (Dkt. No. 119) at 203-204; Trial Tr. (Dkt. No. 121) at 202-203; Trial Tr. (Dkt. No. 123) at 82-83)

Between June 2012 and October 2018, when the Clinic was shut down by the authorities, Cubangbang wrote more than 38,000 prescriptions for oxycodone, representing 4.5 million pills. Cubangbang's oxycodone prescriptions constituted more than 70 percent of his total prescriptions. Of Cubangbang's oxycodone prescriptions, 91 percent were for oxycodone 30 milligrams, which is the most sought after dosage on the street. In 2016, Cubangbang was one of the largest prescribers of government-reimbursed oxycodone in New York State. (Trial Tr. (Dkt. No. 117) at 41-42; Trial Tr. (Dkt. No. 119) at 207-08; Trial Tr. (Dkt. No. 125) at 60-61)

The pill mill operated by Cubangbang was wildly profitable. Between 2015 and 2018, he earned millions from the thousands of oxycodone prescriptions he wrote. Indeed, the

"patients" seen by Cubangbang paid him $180,000 in cash each month.  (Trial Tr. (Dkt. No. 125) at 118)  More than $1.2 million flowed into the Clinic's bank accounts, but Cubangbang stored much of the cash he was paid at home.   "[A]t the beginning of 2018," he had "almost a million dollars of cash" stored in two safes in his house, as well as additional cash stored at his office.  (Trial Tr. (Dkt. No. 123) at 154-55, 159; Trial Tr. (Dkt. No. 125) at 44)  Cubangbang maintains that a million dollars in cash was stolen from his home in early 2018, but in October 2018 – when Cubangbang was arrested – agents found $350,000 in cash at his home.  (Trial Tr. (Dkt. No. 125) at 118)

## II.    PROCEDURAL HISTORY

Cubangbang was arrested on October 11, 2018, and was released on bail six days later.  (Dkt. Nos. 17, 22, 26)  On October 9, 2019, Cubangbang pled guilty to conspiracy to distribute oxycodone, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C) (Count One); conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349 (Count Two); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Three).  ((S1) Information)  Following his plea, Cubangbang was remanded, see Oct. 16, 2019 order (Dkt. No. 110); Oct. 9, 2019 Conf. Tr. at 20, and he is currently detained at the MCC.  (Apr. 6, 2020 Def. Ltr. (Dkt. No. 186) at 2)

Cubangbang now seeks release on bail pending sentencing.[2]  (Apr. 6, 2020 Def. Ltr. (Dkt. No. 186) at 1-2)   He asserts that his age – 52 years – and his "moderate asthma"

---

[2] Cubangbang has consented to having his bail application decided on the papers, and has waived his right to a hearing.  (See Apr. 10, 2020 Def. Ltr. (Dkt. No. 191))  The Government also consents to having Cubangbang's bail application decided on the papers.  (See Apr. 10, 2020 Govt. Ltr. (Dkt. No. 190))

render him susceptible to the COVID-19 virus.  (Id. at 1)  The Government opposes

Cubangbang's application.  (Apr. 8, 2020 Govt. Ltr. (Dkt. No. 188))

## DISCUSSION

## I.    LEGAL STANDARDS

The Bail Reform Act, 18 U.S.C. § 3143(a)(1), provides that

> the judicial officer shall order that a person who has been found guilty of an
> offense and who is awaiting imposition or execution of sentence . . . be detained,
> unless the judicial officer finds by clear and convincing evidence that the person
> is not likely to flee or pose a danger to the safety of any other person or the
> community if released under section 3142(b) or (c).  If the judicial officer makes
> such a finding, such judicial officer shall order the release of the person in
> accordance with section 3142(b) or (c).

18 U.S.C. § 3143(a)(1).  This statute "establishes a presumption in favor of detention."  United

States v. Abuhamra, 389 F.3d 309, 319 (2d Cir. 2004) ("Once guilt of a crime has been

established in a court of law, there is no reason to favor release pending imposition of sentence

or appeal." (internal quotation marks omitted)).

For crimes involving controlled substances for which a maximum term of

imprisonment of ten years or more is prescribed, Section 3143(a)(2) further restricts the

availability of bail.  Section 3143(a)(2) provides that a

> judicial officer shall order that a person who has been found guilty of an offense
> in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section
> 3142 and is awaiting imposition or execution of sentence be detained unless –
>
>> (A)(i) the judicial officer finds there is a substantial likelihood that a
>> motion for acquittal or new trial will be granted; or
>>
>> (ii) an attorney for the Government has recommended that no sentence of
>> imprisonment be imposed on the person; and
>>
>> (B) the judicial officer finds by clear and convincing evidence that the
>> person is not likely to flee or pose a danger to any other person or the
>> community.

18 U.S.C. § 3143(a)(2). Section 3142(f)(1)(C) references "an offense for which a maximum

term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21

U.S.C. 801 et seq.)." 18 U.S.C. § 3142(f)(1)(C).

       Cubangbang pled guilty to conspiracy to distribute oxycodone, in violation of 21

U.S.C. § 841(b)(1)(C). That is "an offense for which a maximum term of imprisonment of ten

years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)." 18 U.S.C.

§ 3142(f)(1)(C). Consequently, his application for bail is governed by Section 3143(a)(2).

       Cubangbang has not satisfied the requirements of Section 3143(a)(2): there will

be no motion for a judgment of acquittal or a new trial, and the Government has not

recommended that no sentence of imprisonment be imposed. See 18 U.S.C. § 3143(a)(2).

Indeed, the Government states that Cubangbang faces a range of 210 to 262 months'

imprisonment, without the benefit of a cooperation agreement or a Section 5k1.1 motion. (Apr.

8, 2020 Govt. Ltr. (Dkt. No. 188) at 1)

       Where, as here, a defendant cannot satisfy the requirements of Section 3143(a)(2),

the "only escape hatch . . . is found in 18 U.S.C. § 3145." United States v. Schlesinger, No. CR.

02-485 (ADS) (ARL), 2005 WL 1657043, at *2 (E.D.N.Y. June 8, 2005). That statute provides

that

> [a] person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who
> meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be
> ordered released, under appropriate conditions, by the judicial officer, if it is
> clearly shown that there are exceptional reasons why such person's detention
> would not be appropriate.

18 U.S.C. § 3145(c); see United States v. Lea, 360 F.3d 401, 403 (2d Cir. 2004) ("[A] defendant

convicted of a crime of violence and awaiting sentencing who cannot satisfy the criteria set forth

in § 3143(a)(2) may nevertheless be released if (1) the district court finds that the conditions of

release set forth in § 3143(a)(1) have been met, and (2) 'it is clearly shown that there are exceptional reasons why [the 'defendant's] detention would not be appropriate.'") (citing 18 U.S.C. § 3145(c)).

"[T]he determination whether a given circumstance presents 'exceptional reasons' under section 3145 requires a 'case-by-case' evaluation by the court, and the court's discretion is 'constrained only by the language of the statute:  'exceptional reasons.'" United States v. Lopez, No. 19 CR 116 (KMW) (JLC), 2020 WL 1678806, at *1 (S.D.N.Y. Apr. 6, 2020) (quoting United States v. DiSomma, 951 F.2d 494, 497 (2d Cir. 1991)).

## II.     THE PARTIES' ARGUMENTS

### A.     Defendant Cubangbang

Cubangbang argues that he should be released on bail because he is 52 years old and suffers from "moderate asthma."  (Apr. 6, 2020 Def. Ltr. (Dkt. No. 186) at 1)  Because of his age and moderate asthma, Cubangbang contends that he is an "at-risk inmate, far more likely than others[] to succumb to COVID-19 should he become infected."  (Id.)  Cubangbang further contends that because he complied with his bail conditions prior to pleading guilty, there is no reason to believe that he is a flight risk now.  (Id. at 2)  Cubangbang asks that if he "is released and obtains temporary privileges to practice medicine, . . . he be allowed to volunteer at a local hospital to assist in treating patients during the COVID-19 crisis."  (Id. at 1)

Cubangbang suggests release on the same conditions that were in effect prior to his guilty plea:  a $1 million personal recognizance bond co-signed by four financially

responsible persons and secured by Cubangbang's home; home confinement enforced by electronic monitoring; and no issuance of prescriptions.  (Id.; Appearance Bond (Dkt. No. 26))

### B.  The Government

The Government opposes Cubangbang's application for release on bail, arguing that (1) the drug conspiracy charge Cubangbang pleaded guilty to requires mandatory detention pending sentencing, barring "exceptional reasons" (citing 18 U.S.C. § 3143(a)(2)), and Cubangbang presents a significant risk of flight; and (2) Cubangbang has not shown that "exceptional reasons" justify his release, given that he "has not been identified by the MCC as an inmate who faces heightened risk due to COVID-19," is "only 52 years old," and "has provided no evidence that he actually suffers from asthma."  (Apr. 8, 2020 Govt. Ltr. (Dkt. No. 188) at 1-3; see also id. at 7)

## III.  ANALYSIS

As discussed above, because Cubangbang pled guilty to conspiring to distribute oxycodone in violation of the Controlled Substances Act – a crime that is punishable by a maximum term of imprisonment of more than ten years – his bail application is governed by Section 3143(a)(2).  See 18 U.S.C. § 3143(a)(2) (cross-referencing offenses listed under 18 U.S.C. § 3142(f)(1)(A)).

And, as also discussed above, Cubangbang has not satisfied the requirements of Section 3143(a)(2):  there will be no motion for a judgment of acquittal or a new trial, and the Government has not recommended that no sentence of imprisonment be imposed.  See 18 U.S.C. § 3143(a)(2).

Accordingly, Cubangbang's only hope for release is the "escape hatch" found in Section 3145(c), which authorizes bail where a defendant (1) "meets the conditions of release set forth in section 3143(a)(1)," meaning he establishes by clear and convincing evidence that he is

not a flight risk or a danger to the community, and (2) "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."  18 U.S.C. § 3145(c).

A.      **"Clear and Convincing Evidence"**

Cubangbang's application for bail founders on the first requirement:  he has not demonstrated by "clear and convincing evidence" that he is not a risk of flight.

As to risk of flight, the circumstances and legal standards are far different than before Defendant's guilty plea.  As to legal standards, although a presumption existed at that time that no condition or combination of conditions could ensure the safety of the community and Cubangbang's return to court if released on bail, the Government bore the burden of demonstrating that Cubangbang was a risk of flight and/or a danger to the community.  See 18 U.S.C. § 3142(b)-(c).  The opposite is true now:  Cubangbang bears the burden of demonstrating that there is "clear and convincing evidence" that he is not a risk of flight.

As to the circumstances of Cubangbang's case, they are also very different.  At the time of Cubangbang's guilty plea, he entered into a cooperation agreement that offered him the possibility of obtaining a Section 5k1.1 motion from the Government.  Cubangbang was expected to be a critically important Government witness at trial, and had reason to believe that he could earn such a motion, and obtain leniency from the sentencing judge.  Those hopes have now been dashed.  The Government has terminated Cubangbang's cooperation agreement; there will be no Section 5k1.1 motion; and Cubangbang faces a range of 210 to 262 months' imprisonment under the Sentencing Guidelines.  (See Apr. 8, 2020 Govt. Ltr. (Dkt. No. 188) at 1)

The prospect of such a lengthy sentence provides Cubangbang with an obvious incentive to flee.  See United States v. Scali, No. 7:16-CR-466-(NSR), 2018 WL 3410015, at *2 (S.D.N.Y. July 12, 2018), aff'd, 738 F. App'x 32 (2d Cir. 2018) ("Defendant's conviction of crimes with an overall guidelines range of 87-108 months is a factor that increases his risk of flight.  Defendant faces the prospect of a long imprisonment that very likely may make him reluctant to willingly submit to incarceration.") (citing United States v. Londono-Villa, 898 F.2d 328, 329-30 (2d Cir. 1990)).

Moreover, while the Defendant is a naturalized U.S. citizen, he was born and raised in the Philippines.  (PTS Rpt.)  Given that he did not enter the United States until October 1994 – at the age of approximately 26 – it is reasonable to assume that the Defendant still has ties to that nation.  Meanwhile, in this country, the Defendant has destroyed his livelihood and business.  He faces a lengthy prison sentence; he will likely never practice medicine again; and the clinic that he operated for twelve years will not re-open.  There is also reason to believe that the Defendant has the assets to flee:  he was earning more than a million dollars a year from his pill mill.  (PTS Rpt.; Trial Tr. (Dkt. No. 123) at 154, 157-59; Trial Tr. (Dkt. No. 125) at 43-45)  As to Cubangbang's family ties, prior to his arrest he was living with his wife; a son was at college in California.  (PTS Rpt.)  At trial, however, Cubangbang testified that he feared that his marriage was in trouble.  (Trial Tr. (Dkt. No. 125) at 175-76 (Cubangbang testifying that he "was afraid that [his] wife will find out [about his misdeeds] . . . and will leave [him]")

Given these circumstances, the Court cannot find by "clear and convincing evidence" that Cubangbang does not pose a risk of flight.  "'As serious as it is, the outbreak of COVID-19 simply does not override the statutory detention provisions [of the Bail Reform Act]. . . . In the absence of evidence demonstrating a change in circumstances concerning

[Cubangbang's] status as a flight risk . . . , detention pending sentence must be maintained.'" United States v. Deonte Cooper, No. 1:18-CR-126 EAW, 2020 WL 1577852, at *3 (W.D.N.Y. Mar. 30, 2020) (quoting United States v. Rollins, 19-CR-34S, 11-CR-251S (WMS), 2020 WL 1482323, at *2 (W.D.N.Y. Mar. 27, 2020)).

  **B.** **"Exceptional Reaons"**

   18 U.S.C. § 3145(c) provides that "[a] person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."  18 U.S.C. § 3143 applies to defendants who are pending sentence or appeal.  See 18 U.S.C. § 3143(a) (referring to "a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence"); 18 U.S.C. § 3143(b) (referring to "a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari").

   Even if Cubangbang had demonstrated by "clear and convincing evidence" that he is not a flight risk – a standard he has not met – this Court could not find that "exceptional reasons" justify his release on bail.

   Cubangbang argues that the COVID-19 pandemic constitutes an "exceptional reason" justifying his release, given his age, "moderate asthma," and the fact that "at least one prisoner housed at the [MCC] . . . has already tested positive for the disease."  (Apr. 6, 2020 Def. Ltr. (Dkt. No. 186) at 1-2)

   There is no question that COVID-19 presents an enormous risk to inmates currently in detention.

> Though the BOP has admirably put transmission mitigation measures in place, see
> Federal Bureau of Prisons, Federal Bureau of Prisons COVID-19 Action Plan,
> https://www.bop.gov/resources/news/20200313_covid-19.jsp, in the event of an
> outbreak at the [MCC] (where the Defendant is currently being detained),
> substantial medical and security challenges would almost certainly arise.  A
> comprehensive view of the danger the Defendant poses to the community requires
> considering all factors – including this one – on a case-by-case basis.

United States v. Stephens, 15-CR-95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020)

(citing United States v. Raihan, No. 20-cr-68 (BMC) (JO), Dkt. No. 20 at 10:12–19 (E.D.N.Y.

Mar. 12, 2020)).

Cubangbang, who is 52 years old, has not demonstrated that he is especially

vulnerable to COVID-19, however.  At the time of his arrest in October 2018, Cubangbang told

the Pretrial Services Officer that he was "in excellent physical health with no medical problems."

That statement was confirmed by his wife and brother.  (PTS Rpt. at 3)  No mention was made of

asthma.  (See id.)  And defense counsel concedes that Cubangbang has never sought medical

care for his alleged "moderate asthma" condition.  (Apr. 6, 2020 Def. Ltr. (Dkt. No. 186) at 1

n.3)  Given these circumstances, there is insufficient evidence that Cubangbang even suffers

from an asthma condition, much less that any such condition puts him at special risk.

Nor has Cubangbang alleged that he has been exposed to the virus or that he has

not received appropriate medical care.  See United States v. Marte, No. 19-cr-795 (SHS), 2020

WL 1505565, at *1 (S.D.N.Y. Mar. 30, 2020) ("Pursuant to 18 U.S.C. § 3142(i), the Court

concludes that, in the absence of any evidence that defendant has a special condition making him

substantially vulnerable to Covid-19, the pandemic alone, which is affecting the community in

its entirety, is not a compelling reason warranting release at this point in time."); see also United States v. Steward, No. 20-cr-0052 (DLC), 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020).

       Finally, Cubangbang says that if he is released, he will seek to volunteer at a local hospital that is treating victims of COVID-19.  Sadly, performing such duties would – as statistics show – expose Cubangbang to a greater risk of harm than any that he currently faces.

       Given all the circumstances, the Court cannot find that "exceptional reasons" exist that justify Cubangbang's release on bail pending sentence.

## CONCLUSION

       Defendant Cubangbang has not met his burden of establishing by "clear and convincing evidence" that he is not likely to flee if released on bail.  Nor has he shown that "exceptional reasons" exist that justify his release on bail pending sentence.  Accordingly, his application for release on bail (Dkt. No. 45) is denied.

Dated: New York, New York
      April 16, 2020

SO ORDERED.

Paul G. Gardephe
United States District Judge

13